UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOHN HARRIS,

               Plaintiff,                        **<u>MEMORANDUM AND ORDER</u>**
                                                     05-CV-2870 (RRM)
      - against -

WILLIAM E. PHILLIPS, ACTING
SUPERINTENDENT, GREEN HAVEN
CORRECTIONAL FACILITY,

               Defendant.
----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Petitioner *pro se* John Harris filed his original petition for a writ of *habeas corpus*

challenging his conviction for Burglary in the Second Degree and Criminal Trespass in the

Second Degree.  (Pet. (Doc. No. 1.) at 1.)  The original petition was stayed so that Harris could

exhaust his state-court remedies.  (Oct. 17, 2005 Order (Doc. No. 5).)  After do doing, petitioner

filed an amended petition.  (Pet.'s Apr. 25, 2010 Ltr. (Doc. No. 25); May 3, 2010 Order (Doc.

No. 26); Amended Pet. (Doc. No. 27).)

      Upon review of the amended petition, the opposition thereto, the petitioner's traverse,

and the state court record, the Court DENIES the amended petition in its entirety.

## BACKGROUND

a.  <u>Criminal Conduct</u>

      Petitioners conviction arises out of a series of burglaries committed on the morning of

March 11, 1999.  (Aff. in Opp'n (Doc. No. 31) at ¶ 4.)  First, Harris was charged with

participation in a burglary at the home of Juanita Ortega at 258 67th Street in Brooklyn.  (*Id.*)

Later that morning, Harris, with co-defendants Oscar Salcedo and Ricardo Torres, attempted to

burglarize the home of Mark Penney at 244 68th Street.  (*Id.* at ¶ 5.)  Penney, a retired police

officer, heard someone "fiddling" with his front door lock, and saw Salcedo through the

peephole.  (*Id.*)  After evidently failing to pick the lock, Salcedo moved on.  (*Id.*)  Penney then

opened his door and moved to the stairwell, where he saw Harris, Salcedo, and Torres exit the

building.  (Tr. at 652, 654-59, 664.)

Penney followed them onto the street, and saw the three men enter a residential building

at 268 68th Street.  (Aff. in Opp'n at ¶ 5-6.)  While inside, the three defendants entered the

apartment of Said Karb, and took a television which they wrapped in a floral blanket, a cable

box, and a video cassette recorder.  (*Id*. at ¶ 7.)  Penney waited, and saw the defendants leave the

building 20 or 25 minutes later, recognizing them as the same men who had been in his building.

(Tr. at 664-65.)  The defendants walked from 68th Street to Ridge Boulevard as Penney followed

them from 20 or 30 feet away.  (Tr. at 669.)  Penney then saw Salcedo turn to look at him and

drop the television still covered in a blanket, and watched as all three defendants ran away

proceeding northward on Ridge Boulevard.  (Tr. at 673-76.)

Penney called 911 and chased the suspects. (Aff. in Opp'n at ¶ 8.)  When the police

arrived at the scene, Penney pointed the police in the petitioner's direction, and the police

apprehended petitioner.  (*Id*. at ¶ 9.)  Penney caught up with the officers, who had detained

Harris, and identified him as one of the burglars.  (*Id.*)  Harris was then placed under arrest.  (*Id.*;

Tr. 686-89.)

b.  The State Court Trial

Petitioner was charged in Kings County with Burglary in the Second Degree, Criminal

Trespass in the Second Degree, among other crimes.  (*Id*. at ¶ 10.)

The trial court, on May 14, 1999, issued "*Parker* warnings" to petitioner, pursuant to

*People v. Parker*, 57 N.Y.2d 136 (1982).  (Aff. in Opp'n at ¶ 11.)  The trial court warned

2

petitioner that it was important that he be present at trial to assist his attorney, and that if he did not return for trial he would be tried in absentia. (*Id.*) When the petitioner failed to appear for pretrial hearings, the court began a *Parker* hearing to determine whether petitioner had voluntarily, knowingly and intelligently waived his right to be present. (*Id.* at ¶ 12.) The *Parker* hearing continued on October 29, 1999 and November 1, 1999. (*Id.* at ¶ 14.) On November 1, 1999, and again on March 20, 2000, the trial court determined that petitioner had waived his right to be present at trial pursuant to *Parker*. (*Id.* at ¶¶ 14, 16; Nov. 9, 1999 Tr. 6-7; Mar. 20, 2000 Tr. at 320-22.)

Petitioner was tried in absentia with co-defendant Salcedo, who was present in court, beginning on March 21, 2000. (Aff. in Opp'n at ¶ 17.) In addition to the testimony of Penny and that of the police officers, the evidence against Harris included jewelry found by the police in petitioner's pocket, the television found on the street, and testimony from co-defendant Torres pursuant to a cooperation agreement. (*Id.* at ¶ 13, 15; Tr., Oct. 8, 1999 Tr. at 53-54; Mar. 24, 2000 Tr. at 1005-07.)

On March 29, 2000, the jury found petitioner not guilty of Burglary in the Second Degree, Criminal Trespass in the Second Degree, and Criminal Possession of Stolen Property in the Fifth Degree with regard to the burglary at Ortega's home. (*Id.* at ¶ 18; Mar. 29, 2000 Tr. at 1491-93.) The jury found petitioner not guilty of Attempted Burglary in the Second Degree as to Penney's home. (*Id.*) Petitioner was, however, found guilty of Burglary in the Second Degree as to Karb's residence and Criminal Trespass in the Second Degree as to Penney's residence. (*Id.*) Petitioner was sentenced in absentia on April 24, 2000 as a persistent violent felony offender pursuant to New York Penal Law § 70.08, to concurrent prison terms of 25 years to life on the burglary count and one year on the trespass count. (Aff. in Opp'n at ¶ 19; Apr. 24, 2000 Tr. at

3

23-28.)  Petitioner was adjudicated a persistent violent felony offender based on prior convictions for Robbery in the First Degree, and Attempted Possession of a Weapon in the Third Degree, both violent crimes.  (Apr. 24, 2000 Tr. at 27-28.)  Harris and began serving his sentence on May 2, 2001.  (Aff. in Opp'n at ¶ 20.)

     c.  <u>State Court Appellate Proceedings</u>

Harris appealed from his judgment of conviction to the Appellate Division, Second Department.  (*Id*. at ¶ 21.)  The Appellate Division affirmed Harris's judgment of conviction on the merits.  *People v. Harris*, 304 A.D.2d 839, 757 N.Y.S.2d 878 (2d Dep't 2003).  Harris filed a motion to reargue the appeal, which the Appellate Division denied.  (Aff. in Opp'n at ¶ 23.)  On April 28, 2003, the New York Court of Appeals denied Harris's application for leave to appeal from the Appellate Division's order affirming the judgment of conviction.  *People v. Harris*, 100 N.Y.2d 582 (2003).

On October 1, 2004, Harris filed a pro se petition for a writ of error *coram nobis*, arguing that his appellate counsel was ineffective for failing to argue that the trial court should have suppressed an in-court identification and statements made by his co-defendant.  (Aff. in Opp'n ¶ 25; Ex. 3 to Aff. in Opp'n (Doc. No. 32-4) at 25.)  The Appellate Division denied his petition because Harris failed to establish that he was denied effective assistance of appellate counsel.  *People v. Harris*, 15 A.D.3d 416, 788 N.Y.S.2d 862 (2d Dep't 2005).  The Court of Appeals denied Harris's application for leave to appeal from the order denying his *coram nobis* petition.  *People v. Harris*, 4 N.Y.3d 887 (2005).

After filing the instant habeas petition in this Court on May 29, 2005, as mentioned above, this Court stayed his petition so Harris could exhaust his claims in state court.  On February 26, 2008, Harris filed another *coram nobis* petition in the Appellate Division, claiming

that appellate counsel was ineffective for failing to raise a claim on direct appeal that he was improperly tried in absentia.  (Ex. 5 to Aff. in Opp'n (Doc. No. 32-5) at 10-15.)  The Appellate Division treated his second coram nobis petition as a motion for leave to reargue his first, and denied the motion on June 25, 2008.  (*Id*. at 74.)  The Court of Appeals denied Harris's request for leave to appeal the denial of his second *coram nobis* petition.  (Aff. in Opp'n at ¶ 34.)

Harris filed a third *coram nobis* petition on July 12, 2009, claiming ineffective assistance of appellate counsel for failure to raise trial counsel's ineffectiveness in not challenging the previous felony convictions used to adjudicate Harris a persistent violent felony offender.  (Ex. 6 to Aff. in Opp'n (Doc. No. 32-6) at 1, 36.)  On December 1, 2009, the Appellate Division denied this petition, finding that Harris failed to establish he was denied the effective assistance of appellate counsel.  *People v. Harris*, 68 A.D.3d 783, 888 N.Y.S.2d 906 (2009).  The Court of Appeals denied Harris's request for leave to appeal on April 2, 2010.  *People v. Harris*, 14 N.Y.3d 841 (2010).

    d.  <u>Proceedings in this Court</u>

This Court granted Harris's application to amend his habeas petition to include the additional claims exhausted following the stay, and Harris filed an amended petition on June 11, 2010.  (Doc. No. 27.)  The state opposed the petition (Doc No. 32), and Harris filed a traverse. (Doc. No. 37.)  The fully-briefed petition is now before the Court.

**STANDARD OF REVIEW**

In deciding a federal habeas corpus petition, the Court must apply the standard of review set forth by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ("AEDPA"). AEDPA requires a rigorous standard of review with regard to claims exhausted in state court , as

5

set forth in petitions filed by state prisoners. *See Williams v. Taylor*, 529 U.S. 362, 402–03

(2000). Under AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Though the "contrary to" and "unreasonable application" clauses of

§ 2254(d)(1) are analyzed independently, both limit the source of the "clearly established law" to

the jurisprudence of the Supreme Court. *Williams*, 529 U.S. at 404–05, 412; *see also Howard v.*

*Walker*, 406 F.3d 114, 122 (2d Cir. 2005).

A state court "adjudicates a state prisoner's federal claim on the merits when it (1)

disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v.*

*Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (citation and internal quotation marks omitted).

"When a state court does so, a federal habeas court must defer in the manner prescribed by 28

U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court

does not explicitly refer to either the federal claim or to relevant federal case law." *Id*. This is

because "federal courts recognize a conclusive presumption that, when presented with an express

federal claim, a state court's decision rests principally upon an application of federal law even

absent any express reference to federal authority." *Reznikov v. David*, No. 05 Civ. 1006, 2009

WL 424742, at *3 (E.D.N.Y. 2009) (citing *Sellan*, 261 F.3d at 314).

A state court decision is "contrary to" established Supreme Court precedent if "the state

court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if a

6

state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405–06.

A state court unreasonably applies federal law where "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 413. The state court's application, however, must be "objectively unreasonable," *id.* at 409–10, which is a "higher threshold" than "incorrect." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). In other words, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). A state court's application of federal law must be "objectively unreasonable." *Id.* at 409. Moreover, if a federal court "finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." *Howard*, 406 F.3d at 122 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629–30 (1993)).

Since petitioner is proceeding *pro se,* this Court reads his filings to "raise the strongest arguments that they suggest." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

## DISCUSSION

Petitioner in essence raises four grounds for granting his habeas petition: 1) he was arrested without probable cause in violation of the Fourth Amendment; 2) he was convicted upon insufficient evidence;[1] 3) he was denied the effective assistance of trial counsel; and 4) he was denied effective assistance of appellate counsel.

---

[1] Petitioner also alleges that the government did not prove every element of the offenses for which he was convicted beyond a reasonable doubt. This claim is simply a restatement of his second, and therefore the Court will treat the two claims as one. *See Jackson v. Virginia*, 443

# I.      Exhaustion of Remedies in State Court[2]

As a general rule, Harris may only bring habeas claims pursuant to § 2254 if he has first exhausted his state-court remedies as to each claim.  A petitioner exhausts his state-court remedies by "giv[ing] the state courts a fair opportunity to pass upon his federal claim."  *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc); *see also Picard v. Connor*, 404 U.S. 270, 276-77 (1971).  To have fairly presented his federal claims to the New York courts, "petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court."  *Daye*, 696 F.2d at 191.  "Specifically, [the habeas petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim."  *Id.*  Further,  "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."  *Id.* at 192 (footnote omitted).  Where, as in New York, review by the highest state court is discretionary, a request for leave to appeal a particular claim to the state's highest court is sufficient; the state's highest court need not review the merits of the claim.  *See Rustici v. Phillips*, 308 F. App'x 467, 469 (2d Cir. 2009) (summary order) (citing *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005)).

---

U.S. 307, 317 (1979) (explaining that the relevant question on an insufficiency-of-the-evidence challenge is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

[2] Although the State has not argued that some of Harris's claims are unexhausted, it has also not expressly waived that argument.  *See* § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.")  Therefore, the Court will undertake an exhaustion analysis.  The State has also not argued any statute-of-limitations defenses on any of the claims Harris presents in his petition.  The Court will not, however, raise that issue *sua sponte*.  *See Acosta v. Artuz*, 221 F.3d 117, 120-22 (2d Cir. 2000).

Petitioner has properly exhausted most of his claims in state court.  Petitioner's claims relating to the Fourth Amendment, the sufficient of the evidence, and the effectiveness of trial counsel were all presented to the Appellate Division and the New York Court of Appeals.  (Brief to App. Div. (Doc. No. 32-1) at 37-59.)  Only one aspect of petitioner's ineffective-assistance-of-appellate counsel claim is exhausted:    arguing in his second *coram nobis* petition that appellate counsel should have investigated his bail conditions.  (Rep. Br. for 2d Coram Nobis Pet. (Doc. 32-5) at 10.)

Petitioner's other claims regarding appellate counsel are unexhausted.  First, Harris never argued to the Appellate Division, via a *coram nobis* petition, that appellate counsel was ineffective for failing to brief the severance and identification issues.  Second, while Harris did raise in his third *coram nobis* petition that appellate counsel should have argued that trial counsel was ineffective for not challenging the introduction of petitioner's past convictions during sentencing, this claim is not properly exhausted.  (3d Coram Nobis Pet. (Doc. No. 32-6) at 2-10.) However, whether trial counsel was familiar enough with Harris's criminal history to argue that it should not have been used at his sentencing involves matters outside of the trial record.  As such, appellate counsel could not have raised trial counsel's ineffectiveness for failing to familiarize herself with matters outside the trial record on direct appeal.  Rather, Harris should have filed a N.Y. C.P.L. § 440.10 petition to raise this argument.[3]  *See People v. Tellier*, 905

---

[3] Even if the Court viewed this claim as properly exhausted because it did not involve matters outside the trial record, it still fails.  Petitioner argues that trial counsel basically admitted he was ineffective in this regard when trial counsel stated, during the sentencing, that he could not "be effective" in contesting the introduction of Harris's criminal history without Harris's assistance. (Apr. 24, 2010 Tr. at 26.)  For this reason, trial counsel objected to sentencing Harris in absentia. (*See id*. at 23-24 ("Your honor, first of all, I would ask for an adjournment for sentencing, basically, because Mr. Harris is not here.").)  Thus, it would strain credulity to hold that trial counsel provided ineffective assistance where he did, in fact, challenge the introduction of Harris's criminal history without Harris present to contest it.  Thus, appellate counsel could not

N.Y.S.2d 915, 916 (App. Div. 2010) (holding that "defense counsel's alleged failure to familiarize himself with the defendant's own criminal record" may not be reviewed on direct appeal because it involves matters outside the trial record"); *People v. Love*, 57 N.Y.2d 998, 1000, 443 N.E.2d 486, 487 (1982) (holding that where the ineffectiveness claim involves matters outside the record, the court "cannot conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts that might have been developed had an appropriate after-judgment motion been made pursuant to CPL 440.10").

This claim – that appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness for not challenging the introduction of petitioner's past convictions during sentencing – is not procedurally barred, so this Court cannot deem it exhausted.  There is no time limit on bringing a § 440.10 petition; Harris could return to state court to exhaust this claim.  *See* N.Y. Crim. Proc. Law § 440.10(1) (noting that a motion to vacate may be made "[a]t any time after the entry of judgment"); *Perez v. Perrott*, No. 94-CV-327, 2008 WL 2323360, at *6 (N.D.N.Y. June 2, 2008) (noting that there is no time limit within which an individual must bring a 440.10 petition).

Petitioner thus presents a "mixed petition," including both exhausted and unexhausted claims.  When confronted with a mixed petition, a district court may stay the petitioner's case so that he can return to state court and exhaust the unexhausted claims.  A district court may also dismiss the petition without prejudice so that the petitioner can exhausted his unexhausted claims.  A district court may also "deny a petition on the merits even if it contains an unexhausted claim."  *Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir. 2002); *see also* 28 U.S.C. §

_____

have been ineffective for failing to argue that point.  Nor could this Court hold that the state court was "objectively unreasonable" in finding that appellate counsel did not provide ineffective assistance.

2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

If the Court were to stay the case, it would abuse its discretion because Harris has not shown good cause for his failure to exhaust. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (instructing that stay-and-abeyance is available only when petitioner has shown good cause for his failure to exhaust and the unexhausted claims are not plainly meritless; if these requirements are not met, a district court abuses its discretion if it stays the case). The Court will also not dismiss the entire case without prejudice because it would jeopardize Harris's ability to raise his exhausted claims in a timely habeas petition. *See id.* As such, the Court will exercise its discretion to treat some of the unexhausted claims – only those that are based on the record before this Court – on the merits because, as discussed below, the Court finds these claims to be plainly meritless.

The Court, however, cannot decide on the merits Harris's claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness when not challenging the introduction of his criminal history at sentencing. Whether that claim is meritorious would be based upon information not presently before this Court. For example, the merits of this claim challenges the potential strategy decisions made by his trial and appellate attorneys, and the evaluation of such claim may require the introduction of testimony outside the record. "[T]he interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines*, 544 U.S. at 273 (citing *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982)). Harris's unexhausted ineffective assistance claim is not readily resolved on the

record presented to this Court, and the Court will not decide the merits of those claims prior to any review by the state courts.

As discussed above, because staying the case would be an abuse of this Court's discretion, and because dismissing the entire petition would jeopardize Harris's ability to present a timely federal habeas petition. The Court will excise the unexhausted claim and will proceed to consider the remainder of the claims on the merits. *See Chu v. Artus*, 07-CV-6684, 2011 WL 8202381 (S.D.N.Y. Aug. 9, 2011) *report and recommendation adopted by* 07-CV-6684, 2012 WL 2899378 (S.D.N.Y. July 16, 2012) (excising some unexhausted claims and deciding the rest on the merits); *Reyes v. Morrissey,* 07-CV-2539, 2010 WL 2034531, at *9 (S.D.N.Y. April 21, 2010) *report and recommendation adopted by* 2010 WL 2034527 (S.D.N.Y. May 19, 2010) (same); *Taylor v. Poole*, No. 07-CV-6318, 2009 WL 2634724, at *25, n.11 (Aug. 29, 2009) (Report and Recommendation) (same).

The Court will now address each ground for Harris's habeas petition in turn.

## II.    The Merits

### a.    The Fourth Amendment Claim

Petitioner claims that he was arrested without probable cause, and, as such, the trial court improperly denied his motion to suppress evidence seized as a result of that arrest. The Court concludes Harris is not eligible for habeas relief on this ground because he had a full and fair opportunity to litigate it in state court.

"Under *Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L.Ed.2d 1067 (1976), federal habeas corpus relief is not available on the ground that evidence produced at trial was the result of an unconstitutional search and seizure, unless the state denied the prisoner an opportunity for full and fair litigation of the claim." *Grey v. Hoke*, 933 F. 2d 117, 121 (2d Cir. 1991). Habeas

review of Fourth Amendment claims is available only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citations omitted).

In the present case, petitioner had an opportunity for full and fair litigation of his Fourth Amendment claim.  Petitioner employed New York State's procedure for litigating Fourth Amendment claims via Article 710 of New York's Criminal Procedure Law, which provided him a full and fair opportunity to litigate this claim.  *See Capellan*, 975 F.2d at 70 n.1 ("[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988), as being facially adequate.").  Petitioner raised this claim on his direct appeal to the Appellate Division, which rejected his claim.  *People v. Harris*, 304 A.D.2d 839, 840, 757 N.Y.S.2d 878 (2003).  Petitioner further sought leave to appeal to the New York Court of Appeals on this issue, which that court denied.  *People v. Harris*, 100 N.Y.2d 582, 796 N.E.2d 484 (2003).  Actual review of a Fourth Amendment claim at the trial, intermediate state appeals court, and state supreme court, is more than required to constitute "an opportunity for full and fair litigation."  *See Jenkins v. Bara*, 663 F. Supp. 891, 894 (E.D.N.Y. 1987).  Accordingly, petitioner's first ground for habeas relief is unavailing.

b.  <u>Sufficiency of the Evidence</u>

Harris also claims that he was convicted upon insufficient evidence and that the State did not prove every element of each offense beyond a reasonable doubt.  Petitioner carries a heavy burden to prevail in a habeas challenge to the sufficiency of evidence to support a state-court

conviction. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Evidence is sufficient to support

a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson*, 443 U.S. at 319.

AEDPA has increased the deference required under *Jackson*, "establish[ing] a standard

that is 'twice deferential.'" *Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) *cert. denied*,

12-5949, 2012 WL 3651031 (U.S. Oct. 1, 2012) (citing *Parker v. Matthews*, 132 S. Ct. 2148,

2152 (2012)). Under AEDPA, the federal court on habeas review "may not . . . overturn[] the

state-court decision rejecting a sufficiency challenge . . . unless the decision was objectively

unreasonable." *Id.* (citations and internal quotation marks omitted).

Petitioner's insufficiency claim in the instant petition contains no facts or argument. He

simply incorporates by reference the arguments his appellate counsel advanced on direct review

to the Appellate Division. ((Doc. No. 32-2) at 57-62.) In that brief, he argued five grounds in

support of his claim. First, there was no evidence that the common areas of Mr. Penney's

building were locked or had trespassing warnings posted, and therefore the trespass charge was

not supported by sufficient evidence. (*Id*. at 57-59.) Second, there was no evidence that Harris

was in Penney's building when co-defendant Salcedo touched Penney's lock, and therefore there

is insufficient proof of aiding and abetting trespass. (*Id*. at 58.) Petitioner's appellate counsel

argued that the fact that petitioner was seen with his two co-defendants leaving Penney's

building five minutes later was not sufficient to raise an inference that he was at the scene of the

attempted burglary five minutes earlier. (*Id.*) Third, petitioner argues that corroborating

evidence cannot rely for its weight only upon accomplice testimony by Torres, pursuant to

*People v. Hudson*, 51 N.Y.2d 233, 238 (1980). Fourth, petitioner argues that because he was

14

merely running beside his co-defendant in the street, and was not carrying Karb's television, there was insufficient evidence linking petitioner to the Karb burglary.  (*Id*. at 59.)  Fifth, petitioner argues that Torres was not a credible witness because of his inconsistent statements and his motive to incriminate petitioner in order to win a favorable deal from the prosecutor.  (*Id*. at 62.)  Torres "told the police [] different inconsistent stories, admitted he lied . . . [and] want[ed] to get the very good plea deal offered by the People."  (*Id*.)

None of these claimed deficiencies in the evidence – individually or in combination – make it objectively unreasonable for a rational trier of fact to find all of the elements of the offenses proven beyond a reasonable doubt.  Petitioner's sufficiency-of-the-evidence claim simply does not approach the high bar set by *Jackson* and AEDPA combined.

As to the criminal trespass charge, Petitioner claims that the state failed to prove the trespass charge beyond a reasonable doubt.  Under the *Jackson* standard, the state-court decision denying Harris's sufficiency challenge was not "objectively unreasonable" in the face of all the evidence presented to the jury, notably, Penney's eyewitness testimony that he observed Harris leaving the apartment building with Salcedo.  (Tr. at 654-58.)

Furthermore, the evidence linking Harris to the Karb burglary is sufficient, and it was not objectively unreasonable for the state court to reject this claim.  Penney testified that he observed Harris enter another residential building with his two co-defendants, emerging with later with Salcedo, who was carrying a TV under a blanket.  Penney also testified that Harris and the others walked from 68th Street to Ridge Blvd., and then began to run when the defendants realized they had been caught in the act. A rational jury could infer that petitioner was engaged in a common enterprise with his two co-defendants to commit burglary at 268 68th Street.  Such evidence

15

precludes this Court from finding that the state court's decision rejecting this challenge was "objectively unreasonable" under the *Jackson* standard.

With regard to the burglary charge, Harris also argues that Torres was not a credible witness, and as such, the evidence linking him to the burglary was insufficient.  This argument is easily disposed.  "[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury . . . ; [the Court] defer[s] to the jury's assessments of both of these issues." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996).

For these reasons, Harris's insufficiency-of-the-evidence claim does not warrant *habeas* relief.

### c.   Ineffective Assistance of Counsel Claims

In order to demonstrate that his counsel was ineffective in violation of the Sixth Amendment, petitioner must satisfy a two-pronged test:  first, he "must show that counsel's performance was deficient," and second, "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Bennett v. United States*, 663 F.3d 71, 84-85 (2d Cir. 2011).  The performance prong of the *Strickland* test is satisfied only if, "in light of all the circumstances," particular "acts or omissions" by counsel made the assistance so ineffective as to be "outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Further, courts must defer to counsel, and apply a "strong presumption" that the challenged acts or omissions of counsel "might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689-90.  A court normally should not fault counsel for declining to pursue a potentially fruitful avenue if that choice would also entail a "significant potential downside." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Sacco v. Cooksey*, 214 F.3d 270, 275 (2d Cir. 2000)).

The prejudice prong of the *Strickland* test requires a showing of errors so serious as to deprive petitioner of a trial whose result is reliable. *Strickland*, 466 U.S. at 687. This showing requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard is "highly demanding," and a claim of ineffective assistance of counsel must be rejected if petitioner fails to carry his burden on either prong. *Bennett*, 663 F.3d at 85 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986)).

*Strickland* is "clearly established Federal law" within the meaning of AEDPA, and thus petitioner may only obtain habeas relief on his ineffective assistance of counsel claims if the state courts applied *Strickland* unreasonably. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Cornell*, 665 F.3d at 374-75.

i.   Ineffective Assistance of Trial Counsel

Harris claims that trial counsel was ineffective for three reasons. First, trial counsel failed to request a charge that trespass cannot be established if a defendant was in the common areas of a building, if the record lacks proof that the front door was locked, that "No Trespass" warning signs were posted, or that the defendant was affirmatively denied entry. Second, trial counsel failed to object to the trial court's marshaling of evidence. Third, when the trial court was marshaling the evidence, trial counsel failed to request a jury instruction that emphasized that petitioner was not seen in Penney's building until five minutes after the attempted burglary. The state court, in rejecting Harris's ineffective-assistance-of-trial-counsel claim, did not unreasonably apply clearly established federal law.

First, the trial court's instructions on the trespass charge were sufficient. By arguing that the trial court should have instructed the jury that there must be evidence of warning signs or

locked doors in order to prove trespass, Petitioner suggests that this is required under New York law in order to prove the element of trespass that a person must "enter or remain unlawfully." N.Y. Penal Law § 140.00(5) (McKinney).  Under New York law, "[a] person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so," and thus the important question is whether license or privilege are present.  *Id*.  Locks and warning signs are merely evidence probative of license or privilege.  Trespass may be proven without proof of locks or warning signs.  *See People v. Taylor*, 114 Misc. 2d 680, 681 (N.Y. Sup. Ct. 1982) (discussing presence of locks and "no trespassing" signs as evidence probative of whether a person entered with license or privilege, not as elements of the offense).  Thus, given that the jury instruction sufficiently conveyed the elements of the crime, trial counsel was not deficient under *Strickland*, and, even if it were, the Appellate Division did not "unreasonably" apply *Strickland* to those facts.

Petitioner's second ground for claiming ineffective assistance is also unavailing. Petitioner claims that trial counsel was ineffective in failing to object to the trial court's phrasing in marshaling the evidence.  The trial court charged that "[t]he proof in this case is that the allegedly stolen property, that being the television of [] Karb, was found in the possession of both defendants within minutes of the theft of such property."  Petitioner argues that counsel should have objected and asked the trial court to remind jurors that Penney testified that only Salcedo, not petitioner himself, carried the television from the Karb burglary.  (*Id.*)

The trial court was not obligated under New York law to marshal the evidence for the jury, "except to the extent necessary to explain the application of the law to the facts of the case." *People v. Saunders*, 64 N.Y.2d 665, 667, 474 N.E.2d 610 (1984).  But when the trial court does, "the critical issue on review is always whether any deficiency by it in that respect denied

defendant a fair trial." *Id*.  Here, the record does not indicate in any way that the trial court's supposed misstatement when marshaling the facts denied Harris a fair trial, particularly in light of the evidence of his guilt.  As such, trial counsel's performance was not deficient under *Strickland*, and, even if it were, it did not prejudice Harris, again, in light of the evidence of his guilt.  Thus, the Appellate Division did not "unreasonably apply" *Strickland* when denying his ineffectiveness claim on these grounds.

Finally, Harris was not prejudiced by counsel's failure to request that the trial court remind the jury that Penney did not see Harris in his building until five minutes after the attempted burglary.  Nor were the state courts unreasonable in deciding that petitioner was not prejudiced thereby.  Petitioner's trial counsel, in his summation, argued the point:

> [I]n the two apartments that were allegedly burglarized, once again no evidence that John Harris was even there . . . Concerning Mark Penney's apartment, Mark Penney admitted he didn't even see when he looked through the peephole anyone else.  He just saw the face, he claims, of Mr. Salcedo, and … the back of three people leaving the apartment, leaving the building."  (Mar. 27, 2000 Tr. at 1327-28.)

Requiring the trial court to repeat that point cannot be expected to have changed the outcome of Harris's trial.  Thus, the Appellate Division did not "unreasonably apply" *Strickland* when denying his ineffectiveness claim on these grounds.  Accordingly, petitioner's fourth claim, ineffective assistance of trial counsel, is meritless.

### ii.   Ineffective Assistance of Appellate Counsel

In reviewing Harris's grounds in support of his ineffective-assistance-of-appellate-counsel claim, the Court is mindful of the Supreme Court's view that effective appellate advocates tend to "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Appellate counsel is not ineffective simply because she fails to brief or argue every possible issue.  To constitute ineffective

assistance of appellate counsel, the omission of an issue in the appeal must involve the omission

of a "significant and obvious" issue, in order to brief and argue issues that were "clearly and

significantly weaker." *Busiello v. McGinnis*, 235 F. Supp. 2d 179, 192 (E.D.N.Y. 2002) (citing

*Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).  By this standard, Harris's ineffective-

assistance-of-appellate-counsel claim is meritless.

### 1.   Severance

Petitioner argues that appellate counsel should have argued that Harris's trial should have

been severed from that of Salcedo.  New York Criminal Procedure Law § 200.40(1) does allow a

court to grant a motion for severance on a showing of "good cause," which includes a showing

that the defendant "will be unduly prejudiced by a joint trial."  New York courts have a strong

preference for joint trials of criminal defendants, however.  The New York Court of Appeals has

held that "[t]he decision to grant or deny a separate trial is vested primarily in the sound

judgment of the Trial Judge, and defendants' burden to demonstrate abuse of that discretion [on

appeal] is a substantial one." *People v. Mahboubian*, 74 N.Y.2d 174, 183, 543 N.E.2d 34, 38

(1989).  The trial court is only compelled to sever the trial "where the core of each defense is in

irreconcilable conflict with the other and where there is a significant danger, as both defenses are

portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt."

*Id.* at 184.  That circumstance did not arise here.

There are two aspects of the present case that weighed in favor of a joint trial.  First,

proof against both defendants was supplied by the same evidence, including Penney's eyewitness

testimony.  *See Mahboubian*, 74 N.Y.2d at 183, ("[w]here proof against the defendants is

supplied by the same evidence, only the most cogent reasons warrant a severance") *quoting*

*People v. Bornholdt*, 33 N.Y.2d 75, 87, 350 N.Y.S.2d 369, 305 N.E.2d 461 (1973)).  And

second, petitioner and his co-defendant were accused of acting in concert. *See Mahboubian*, 74 N.Y.2d at 183.

Ineffective-assistance claims related to an omission by counsel to move for separate trials for co-defendants are rarely granted in New York. *See, e.g.*, *Stapleton v. Graham*, 09-CV-0382 (ENV) (LB), U.S. Dist. LEXIS 49239 at *37-42 (E.D.N.Y. May 6, 2011); *Morenito v. Fischer*, 409 F. Supp. 2d 170, 177 (W.D.N.Y. 2006); *Torres v. Irvin*, 33 F. Supp. 2d 257, 266 (S.D.N.Y. 1998) (rejecting claims of ineffective assistance of appellate counsel for failure to argue that trial counsel was ineffective for failure to move to sever the trial); *see also, e.g.*, *Taylor v. Poole*, 07 CIV 6318 (RJH) (GWG), U.S. Dist. LEXIS 76316 at *30-39 (S.D.N.Y. Aug. 27, 2009) *report and recommendation adopted*, 07 CIV. 6318 (RJH) (GWG), U.S. Dist. LEXIS 96061 (S.D.N.Y. Aug. 26, 2011); *Aramas v. Donnelly*, 99 CIV 11306 (JSR) (AJP), U.S. Dist. LEXIS 19497 at *53-63 (S.D.N.Y. Oct. 15, 2002) (rejecting claims of ineffective assistance of trial counsel for failure to move to sever).

The claim is plainly meritless, for failure to satisfy the performance and prejudice prongs of *Strickland*. Appellate counsel made several different arguments on direct appeal, and was not ineffective for failing to include the severance argument, given that it was highly unlikely to succeed.

### 2.   Identification Evidence

Harris also argues that appellate counsel was ineffective for failing to argue that Penney's identification of him was unduly suggestive. The claim is meritless. Appellate counsel did not fall short of effective performance by omitting to argue the point, nor is there any likelihood that counsel would have been successful had she done so.

Petitioner claims that Penney "never observed the faces of the other two males" as the three alleged burglars left the Karb residence. The trial transcript indicates otherwise. Penney testified that, after following the three men out of his own apartment building, he followed them from about 50 or 60 feet back, and "caught their profiles" as they entered the apartment building where Karb lived. (Mar. 22, 2000 Tr. at 661-62.) Penney later observed the three men leaving the Karb apartment building and identified them as the same individuals. (*Id.* at 665.) Furthermore, Penney testified that he never lost sight of Harris from the time petitioner began running away from him until the moment he caught up with petitioner further down 68th Street and told Officer Burkley "that's one of them." (*Id.* at 680, 688.)

In light of the testimony that Penney did observe Harris during the course of the burglaries, appellate counsel was not deficient for failing to argue this point. Even if she was, the Penney's testimony that he observed Harris during the burglaries indicates that appellate counsel's failure to argue this point would not have affected the outcome of his case. Therefore, the claim is meritless.

### 3.   Irregularities in bail bond paperwork

Finally, Harris argues that was denied the effective assistance of appellate counsel based on counsel's failure to adequately investigate irregularities in petitioner's bail bond paperwork. The irregularities, Harris contends, amounted to a potential due process violation, and counsel's failure to investigate those irregularities or argue them on appeal amounted to ineffective assistance under *Strickland*.

In order for Harris to prevail on this claim, he must demonstrate that, from an objective standpoint, the state court unreasonably applied *Strickland*. He cannot meet this very high burden. First, it is not entirely clear that any irregularities in Harris's bond paperwork would

amount to a due process violation.  He cites no case law to support this argument.  Second, and assuming that the irregularities did amount to a due process violation, Harris does not offer any legal support for the proposition that appellate counsel's failure to investigate the irregularities somehow prejudiced him.  In other words, even had appellate counsel investigated the irregularities, there is no "reasonable probability that . . . the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Finally, and most importantly, even if Harris could show a reasonable probability that a different outcome would have resulted but for appellate counsel's errors, the state court's conclusion to the opposite effect was not "objectively unreasonable" as required here.

## CONCLUSION

For the reasons discussed herein, the amended petition (Doc. No. 27) is hereby DISMISSED with prejudice.  The Clerk of Court is directed to enter judgment dismissing this petition, send a copy of the judgment and this Memorandum and Order to Petitioner, and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
       March 28, 2013

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge